[Civ. No. 3799. Fourth Dist. July 22, 1949.]

CARYL C. SANBORN et al., Respondents, v. FEDERAL CROP INSURANCE CORPORATION (a Corporation), Appellant.

James M. Carter, United States Attorney, Ernest A. Tolin, Chief Assistant United States Attorney, Herschel E. Champlin, Assistant United States Attorney, Clyde C. Downing, Chief of Civil Division, Office of United States Attorney, and John S. Griffin, Attorney United States Department of Agriculture, for Appellant.

David S. Folsom for Respondents.

BARNARD, P. J.—This is an action to recover on an insurance contract covering a cotton crop to be grown by the plaintiffs on 70 acres of land during the 1946 season. The contract insured the plaintiffs, on an average yield basis, against loss due to unavoidable causes including damage resulting from frost, insect infestation and failure of the water supply. The contract also excepted from its coverage any loss caused by neglect of the insured, including failure to follow good farming practices or failure to properly apply irrigation water if available.

There was an admitted partial crop failure, and there is no dispute as to the extent or value of the shortage as compared with the average yield. The plaintiffs sued for $9,005.20, alleging that this shortage was due to unavoidable causes, and that they had done everything required of them by the contract and the rules and regulations of the defendant and United States Department of Agriculture. The answer denied these allegations and alleged that any loss resulted from a failure to follow good farming practices. It was further alleged that if any loss occurred through unavoidable causes,

the plaintiffs had failed to give a written notice of probable loss immediately thereafter and before the crop was harvested. A jury returned a verdict in favor of the plaintiffs for $6,104.40, less $511.94 which was admittedly due to the defendant upon its counterclaim. Judgment was entered accordingly, and the defendant has appealed.

The insurance contract provided, as a condition precedent to any liability, that the insured should establish that any loss claimed was directly caused by one or more of the hazards insured against, and was not caused by any of the hazards not insured against. The appellant first contends that the respondents did not sustain the burden of proof thus resting upon them. In effect, it is contended that the evidence is not sufficient to support the implied finding that the amount of loss or damage to this crop, found by the jury, was caused by hazards insured against and was not caused by hazards not insured against.

The appellant contends that the evidence shows that this cotton was planted too late; that the land was infested with Johnson and Bermuda grass; that respondents did not follow good farming practices in attempting to keep these grasses down; that they did not properly irrigate the land; that their failure to obtain water for another irrigation during August was caused by their own act, and not by an inability to secure water; and that they did not establish that their loss did not result from their own careless farming. While a part of the evidence is to that effect, the evidence as a whole is sharply conflicting in this regard. It rather conclusively appears that there was an acute shortage of water during the whole of August. There is evidence that the respondents tried to get water for an irrigation in August and that water was unavailable until August 29 and then not in sufficient quantity. There is also evidence that the land was properly farmed in the usual manner. This entire question was one of fact for the jury. There was evidence of damage to the crop from lack of water, from wire worms or cut worms earlier in the season, and from a heavy frost early in November; that this frost resulted in severe damage throughout that area; and that this fact was known to the appellant's local representatives. While the percentage of loss attributable to each of the three causes above named was estimated differently by various witnesses at various times, the evidence as a whole is amply sufficient to establish that the damage to the crop

resulted from these causes, taken together, and not from causes which were not insured against, and is sufficient to support the verdict of the jury insofar as those questions are concerned. Nothing more than a conflict in the evidence appears in this connection.

█ It is next contended that no oral notice of probable loss was ever given to the corporation and that, in any event, it was not notified of any probable loss until after the cotton had been harvested and removed from the land. One paragraph of the insurance contract reads:

"Unless otherwise provided by the Corporation, if a loss is probable, notice in writing shall be given the Corporation at the office of the county association immediately after any material damage to the insured crop and before the crop is harvested, removed or any other use is made of it. Any such notice shall be given in time to allow the Corporation to make proper inspection."

The cotton crop insurance regulations of 1946, which were admittedly a part of the contract, included an instruction manual. One paragraph of this manual reads:

"The insured is to notify the county committee of damage to, or probable loss of, his cotton crop. For the protection of the insured it is desirable that such notice be given in writing. However, any manner or form of notice acceptable to the county committee will be accepted by the Corporation. When such notice is received, the county committee should advise the insured that acreage of cotton must not be put to another use without the written consent of an authorized representative of the Corporation if the damage occurred after it was too late to replant. The county committee should likewise advise the insured that they will inform the Director of the report of damage to the insured's crop."

Written notice of probable loss to be given at the office of the county association before the crop is harvested and in time to allow a proper inspection to be made is thus provided for "unless otherwise provided by the Corporation." Such other provision is made by the part of the regulations above quoted. A large measure of authority is thus delegated to the county committee with a corresponding duty on its part, and the question here is whether the evidence supports the implied finding that the respondents gave such a notice of probable loss as to substantially and sufficiently comply with these provisions.

One of the respondents testified that there was a shortage of water about the first of August; that they asked the irrigation district for water for the final irrigation on or about the first part of August; that water was not available for them until about the first of September, and then in such a small volume that it was impossible to do any irrigating; that "I notified the Triple AAA office"; and that he talked to the secretary at the local office on August 29 and "told him the circumstances." He further testified that he asked the secretary's advice as to whether it would do more harm than good to irrigate at that late date. The appellant now seeks to interpret this evidence as a mere asking for advice, but the jury was entitled to consider it as a notice of probable loss from water shortage. Of course, at that time, no one could know or estimate the extent of the probable loss from that cause. This witness further testified that he first discovered that frost damage was likely to occur early in November; that he was not sure but he thought that he talked to the secretary at the local office about this matter at that time; that the frost damage was noticeable late in the year; that everyone in the area had considerable frost damage; that he talked to the secretary at the local office about this loss to "that crop and all other crops combined"; that the adjuster later came into the field where he could "look at the bolls on the crop that had turned black from frost damage"; and that the adjuster made his own estimate "of the crop that was lost by water, by frost and by worms." The other respondent testified that this adjuster went to the field with him and asked him many questions but not about percentages, and that he did not remember whether the adjuster asked him what he thought about the frost damage but that "You could plainly see it. The bolls were all standing on the cotton, rotted."

This adjuster testified that he went out and looked over the ranch in the latter part of December and that he prepared the first proof of loss, which is dated January 7, 1947. He also testified that he made a written report to the appellant in which he stated that he had checked the acreage; that all cotton was picked; that the respondents were very short on water; that the wire worms did a lot of damage; that the early frost did some damage; and that "No damage due to causes not insured against." The secretary of the local office testified that he made out a notice of probable loss about

Christmas time. The harvest was completed on December 24. The state director for the appellant testified that he received from the county office some time during the latter part of the year a notice of probable loss to the plaintiffs, made out on the regular form provided and used to report "losses or probable damage to crops."

The claim under the first proof of loss dated January 7, 1947, was rejected and the appellant sent another adjuster to the respondents with a revised proof of loss, prepared by the appellant, wherein the percentages as to the amount of loss from these three causes were considerably changed, and in which it was provided that the claim of loss be reduced 25 per cent because of "failure to properly irrigate the crop." This adjuster was told to obtain the respondents' signature to this new proof of loss and testified that he understood the claim would be paid if it was signed. The respondents refused to sign this changed proof of loss whereupon the adjuster assisted them in preparing a third proof of loss, which was forwarded to the appellant. In March, the respondents received notice of final rejection of their claim, "because of failure to comply with (the regulations) in that proper farming practices were not followed."

The claims were rejected because of the amounts claimed for the different causes of damage and the relative damage attributable to the various causes. No objection was made as to the form of the notice of probable loss, or to the fact that no such notice had been given. This point was first raised after this action was filed. With respect to the damage from lack of water, the evidence is sufficient to sustain the implied finding that a notice of probable loss was given in a "manner or form" which was "acceptable to the county committee" and which it accepted and acted upon. If no notice was given, as appellant now contends, it seems strange that the local office sent in a form giving notice of probable loss and the state office sent out an adjuster with instructions to investigate and report on the amount of the loss. While the evidence of notice with respect to damage by frost is less definite it is not entirely lacking. One of the respondents talked to the secretary about the frost damage both to this crop and other crops. This seems to have been a sufficient notice to have been accepted and acted upon by the appellant over a period of several months before the claim was finally rejected for other reasons.

The appellant argues that any such notice was not received in time to allow it to make a proper inspection before the crop was harvested and removed. Not only was this a matter which could be "otherwise provided by the Corporation" but the evidence, as a whole, indicates that such other provision was here made. This is indicated not only by the actions of the county committee as above noted, but the local committee did not advise the respondents that the crop should not be harvested or that any other action should be taken by them. While the good cotton had been removed before an inspection was made, the black cotton bolls disclosing the frost damage were still there and could be and were inspected. A further consideration is that aside from the matter of frost damage the nature of the damage was such that the extent of the damage could only be determined after the crop was harvested, and no prejudice appears. The entire question was one of fact and we think the evidence as a whole, with the reasonable inferences therefrom, is sufficient to support the implied finding that the respondents substantially complied with the requirements of the contract in this respect.

There is no evidence that notice of probable loss from worm damage was ever given to the appellant. There was evidence that such damage would amount to 15 or 20 per cent of the total damage to the crop. The jury, in its verdict, allowed only two-thirds of the respondents' claim, although there was evidence which would otherwise have sustained a finding in the full amount. A part of this reduction may have been made by the jury because it found that no notice of the probable loss from the worm damage was given. There is nothing in the record which would justify this court in reducing the judgment because of this matter.

The appellant strenuously insists that under the decisions of federal courts this insurance contract must be strictly interpreted in its favor. Conceding this, the only questions here involve the weight of the evidence, rather than the meaning of the contract, and the usual rules apply.

The judgment is affirmed.

Mussell, J., concurred.